MICHAEL SPIELMAN et al., Appellants, v ACME NATIONAL SALES COMPANY, INC., Defendant, and FLEET NATIONAL BANK et al., Respondents.

Third Department, July 11, 1991

### APPEARANCES OF COUNSEL

*Rapport, Meyers, Griffen & Whitbeck (Victor M. Meyers* of counsel), for appellants.

*Connor, Curran & Schram (Paul M. Freeman* of counsel), for respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

Plaintiff Michael Spielman was president and sole shareholder of Acme National Sales Company, Inc. (hereinafter Acme New York), a New York corporation that manufactured and sold refrigeration and kitchen units. In 1985, Spielman sold Acme New York to Acme Kitchen Corporation, a Delaware corporation, which then changed its name to defendant Acme National Sales Company, Inc. (hereinafter Acme Delaware). To purchase Acme New York, Acme Delaware arranged for financing with defendant Fleet National Bank (hereinafter Fleet) which loaned Acme Delaware $3 million and issued an irrevocable letter of credit to secure a $1.3 million promissory note issued by Acme Delaware to Spielman. The balance of the purchase price was paid in cash and an additional promissory note given by Acme Delaware to Spielman for $500,000.

Fleet's loan and letter of credit were secured by a "security agreement" with Acme Delaware which gave Fleet a security interest in all of the assets and inventory of Acme Delaware and empowered Fleet to, *inter alia,* take possession of, manage and sell Acme Delaware's assets in the event of default. Spielman's $500,000 promissory note was secured by a "pledge agreement" with Acme Delaware, which provided Spielman with a security interest in the stock of a soon to be created wholly owned subsidiary of Acme Delaware and a perfected security interest in an "exclusive supply agreement" between the subsidiary and Acme Delaware. Accordingly, Acme Delaware formed a wholly owned subsidiary, plaintiff Greenport Parts Corporation (hereinafter Greenport), which then entered into an agreement with Acme Delaware whereby Greenport

held exclusive rights to sell spare parts for Acme Delaware products.

To induce Fleet to provide Acme Delaware with financing, Spielman entered into an "intercreditor and subordination agreement" (hereinafter intercreditor agreement) with Fleet that subordinated Spielman's security interest in Acme Delaware to Fleet's with the exception of Spielman's security interest in Greenport's stock pursuant to the pledge agreement. The intercreditor agreement provided Spielman with "a first and senior security interest and lien in the stock of Greenport * * * and any income derived from the operation of Greenport * * * under the Pledge Agreement superior to the security interests and liens granted to [Fleet]".

In December 1988, Acme Delaware defaulted on its obligations to both Spielman and Fleet. On March 1, 1989, Spielman attempted to exercise ownership and control over Greenport, pursuant to the pledge agreement, by demanding that Acme Delaware turn over its customer lists and records of sales and spare parts and make available for inspection Greenport's books and records. When Acme Delaware failed to do so, Spielman and Greenport commenced this action and obtained a temporary restraining order enjoining Acme Delaware from any continued violation of the exclusive supply agreement.

In May 1989, Fleet exercised its rights under the security agreement with Acme Delaware by taking physical possession of Acme Delaware's assets and retaining defendant Liquitonics, Inc. as its agent for the purposes of liquidating Acme Delaware's assets. Spielman requested that Fleet abide by the temporary restraining order issued against Acme Delaware. Fleet refused and Spielman sought leave to amend the complaint against Acme Delaware to add Fleet and Liquitonics as defendants as well as a preliminary injunction preventing Fleet's operation of Greenport's spare parts business. Supreme Court granted leave to amend but denied the request for temporary relief other than to enjoin Fleet and Liquitonics from disposing of certain records belonging to plaintiffs. Fleet apparently continued to sell spare parts until it sold Acme Delaware's remaining assets to United Acme Holding Corporation (hereinafter United) in July 1989.

Fleet and Liquitonics answered plaintiffs' amended complaint with a general denial and counterclaims which, in essence, allege that Spielman tortiously interfered with Fleet's sale of Acme Delaware to United. Fleet and Liquitonics then

moved for summary judgment dismissing the amended complaint against them and plaintiffs cross-moved to dismiss the counterclaims. Supreme Court granted the motion by Fleet and Liquitonics (hereinafter collectively referred to as defendants) and denied plaintiffs' cross motion without prejudice to renew upon completion of discovery. This appeal by plaintiffs followed.

■ We affirm. Plaintiffs' first cause of action against defendants alleges that Fleet was bound by the exclusive supply agreement because Fleet became Acme Delaware's successor or assignee upon seizing Acme Delaware's assets and operating the business until its sale in July 1989. To effect a valid assignment, however, the parties must so intend (see, 6 NY Jur 2d, Assignments, § 6, at 239), and nothing in the security agreement between Fleet and Acme Delaware manifests an intent to *assign* Fleet a present or future interest in Acme Delaware's assets. Moreover, it is readily apparent that Fleet's possession and control of Acme Delaware's assets, undertaken by the latter upon the former's default pursuant to the security agreement, amounted to a "substantive" change in ownership, rather than one of mere form, such as to preclude Fleet from becoming a "successor in interest" to Acme Delaware (see, *City of New York v Turnpike Dev. Corp.*, 36 Misc 2d 704, 706). Thus, Fleet cannot be bound to the exclusive supply agreement as an assignee of or successor to Acme Delaware.

To avoid this result, plaintiffs urge this court to consider the exclusive supply agreement in context with the entire transaction initially undertaken to finance Acme Delaware's purchase of Acme New York. Plaintiffs argue that, by providing Spielman, pursuant to the intercreditor agreement, with a superior security interest in Greenport and the exclusive supply agreement, arguably the only asset of Greenport with any real value, Fleet essentially agreed to be bound by the exclusive supply agreement. Plaintiffs argue that, by holding otherwise, Supreme Court "render[ed] Spielman's bargained-for security for the $500,000 promissory note almost worthless".

UCC article 9 controls the exercise of security interests and, specifically, UCC 9-207 outlines the rights and duties of a secured party in possession of collateral, including a party which has taken possession after default (see, UCC 9-207; *Marine Midland Bank v CMR Indus.*, 159 AD2d 94, 102). Pursuant thereto, "[a] secured party must use reasonable care in the custody and preservation of collateral in his possession" (UCC 9-207 [1]). A secured party may also, *inter alia,* "use or

operate the collateral for the purpose of preserving the collateral or its value" (UCC 9-207 [4]), and subsequently "sell, lease or otherwise dispose of any or all of the collateral" (UCC 9-504 [1]). The standard of conduct applied to secured parties disposing of collateral is that they do so in a "commercially reasonable" manner (UCC 9-504 [1]; *Bankers Trust Co. v Dowler & Co.,* 47 NY2d 128, 134).

Here, Fleet took possession and operated Acme Delaware only to dispose of its assets and plaintiffs offer nothing to indicate that Fleet did so in a commercially unreasonable manner or that any alleged breach of the exclusive supply agreement amounted thereto. As a general proposition, we find that, unless it is specifically agreed otherwise, a secured creditor should not be bound to contracts entered into between the debtor and third parties, notwithstanding the secured creditor's possession of the debtor's assets as collateral after default *(see, e.g., Lambros Co. v Aetna Cas. & Sur. Co.,* 468 F Supp 624; *First Natl. Bank & Trust Co. v Holston,* 559 P2d 440, 444 [Okla]; *see also,* UCC 9-317). Given the absence of a specific agreement between Fleet and Spielman to the contrary, we conclude that Fleet was not bound to honor the exclusive supply agreement.

We note that plaintiffs' first cause of action also alleges that Fleet tortiously interfered with and converted Spielman's collateral on the $500,000 Acme Delaware promissory note by "operating the spare parts business". That collateral, however, was limited essentially to Greenport's stock and the exclusive supply agreement which, as previously discussed, Fleet was not bound to honor. Accordingly, plaintiffs cannot succeed on this theory of recovery as Fleet's disposal of the spare parts inventory did not amount to a conversion of Spielman's collateral.

The second cause of action brought against defendants alleges that Fleet breached the intercreditor agreement by failing to subordinate its interests in Greenport and the income derived therefrom. That agreement clearly states that Spielman's superior security interest is in Greenport's stock and the income derived from the operation of Greenport under the pledge agreement with Acme Delaware. Plaintiffs contend that, because the intercreditor agreement refers to Spielman's superior interest in the pledge agreement between Spielman and Acme Delaware, which in turn refers to the exclusive supply agreement, Fleet contracted to honor the exclusive supply agreement pursuant to the intercreditor

agreement. We cannot countenance such a strained and unsupportable interpretation, particularly in the face of what we find to be the clear and unambiguous language of the intercreditor agreement *(see, Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172). The expressed language of the intercreditor agreement gives Spielman a superior interest in Greenport's stock and the exclusive supply agreement, but says nothing of Fleet's obligation to Spielman pursuant thereto. Absent any expressed assumption of liability in the intercreditor agreement pursuant to the exclusive supply agreement, we read the intercreditor agreement as imposing no contractual liability upon Fleet for the provisions of the exclusive supply agreement between Spielman and Acme Delaware.

■ We turn briefly now to the remainder of plaintiffs' appeal, which argues that Supreme Court erroneously denied their motion for summary judgment dismissing the counterclaims in that defendants failed to submit sufficient proof to create triable issues of fact. In its counterclaims Fleet alleged that plaintiffs tortiously interfered with attempts to sell the lawfully repossessed assets of Acme Delaware. Specifically, Fleet alleges that Spielman maliciously made certain false representations and statements to representatives of Assets Acquisition Corporation, a corporation seeking to purchase Acme Delaware's assets. Because we take the view that Fleet's affidavits, as well as Spielman's examination before trial in a related case, raise factual issues as to whether Spielman acted for economic interest rather than malevolence *(see, Matter of Schulz v Washington County,* 157 AD2d 948, 950; *Smukler v 12 Lofts Realty,* 156 AD2d 161, *lv denied* 76 NY2d 701), we find that Supreme Court properly denied the motion as to Fleet's counterclaims for prima facie tort and tortious interference with a precontractual relationship.

We further find that questions of fact exist as to the counterclaim for fraud. Fraud may lie where a declarant has superior knowledge of facts and implies that they know facts which support an opinion *(see, West Side Fed. Sav. & Loan Assn. v Hirschfeld,* 101 AD2d 380, 385, *lv denied* 65 NY2d 605). Here, Fleet alleged that Spielman gave Assets Acquisition false information and an inappropriate opinion as to Acme Delaware's assets about which Spielman had superior knowledge. Again, Fleet's affidavits and Spielman's testimony

during a related proceeding create factual issues of Spielman's representations. Accordingly, plaintiffs' cross motion was properly denied.

CASEY, WEISS, MIKOLL and HARVEY, JJ., concur.

Ordered that the order is affirmed, with costs.