## Radium2 Capital, LLC v Platinum Asset Funding, LLC

2025 NY Slip Op 32143(U)

June 15, 2025

Supreme Court, New York County

Docket Number: Index No. 652120/2020

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

------------------------------------------------------------------------------X

RADIUM2 CAPITAL, LLC (F/K/A RADIUM2 CAPITAL INC.),

| | |
|---|---|
| **INDEX NO.** | 652120/2020 |

                                    Plaintiff,

| | |
|---|---|
| **MOTION DATE** | N/A |

                             - v -

| | |
|---|---|
| **MOTION SEQ. NO.** | 012 013 |

PLATINUM ASSET FUNDING, LLC, ARENA PRFG, LLC, PRIME MERIDIAN SPECIAL OPPORTUNITIES FUND, LP, ARENA INVESTORS, LP, and CETERIS PORTFOLIO SERVICES, LLC,

**DECISION + ORDER ON MOTION**

                             Defendants.

------------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 012) 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 481, 483, 504, 505, 506, 507, 508, 509, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 563

were read on this motion to/for          SUMMARY JUDGMENT (AFTER JOINDER)          .

The following e-filed documents, listed by NYSCEF document number (Motion 013) 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 482, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 511, 512, 513, 514, 515, 516, 543, 562

were read on this motion to/for[1]          SUMMARY JUDGMENT (AFTER JOINDER)          .

This action arises out of an alleged scheme by defendants Platinum Asset

Funding, LLC (PAF), Arena PRFG, LLC (Arena PRFG), and Arena Investors, LP (AILP)

to convert monies owed to plaintiff Radium2 Capital, LLC (f/k/a Radium2 Capital Inc.)

(Radium) in connection with certain receivables that Radium allegedly purchased from

Platinum Rapid Funding Group Ltd. (PRFG), a merchant cash advance provider,

---

[1] The court read and considered, where appropriate, documents mentioned in the parties' papers but omitted in this autogenerated caption.

**652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC**          **Page 1 of 23**
  **Motion No.  012 013**

1 of 23

pursuant to a Master Participation Agreement between Radium and PRFG.[2]  According to Radium, although it purchased these receivables outright from PRFG, defendants wrongfully transferred the receivables to PAF through a sham Uniform Commercial Code (UCC) Article 9 sale.

In motion sequence number 012, Radium moves pursuant to CPLR 3212 for partial summary judgment on liability on Radium's causes of action for (i) declaratory judgment and (vi) conversion.[3]  In motion sequence number 013, defendants PAF, Arena PRFG, AILP, Prime, and Ceteris move pursuant to CPLR 3212 for summary judgment dismissing the complaint.

**Background**

PRFG

PRFG provides cash advances to small and medium-sized businesses in exchange for future receipts or future receivables, which are deducted in incremental amounts from the merchant's bank account as a percentage of the merchant's gross revenue until the full purchased amount is paid out.  (NYSCEF 445, JSUF ¶ 2.)

---

[2] The action was discontinued against PRFG.  (NYSCEF Doc. No. [NYSCEF] 222, Mar. 29, 2021 Order.)  Moving defendants PAF, Arena PRFG, AILP, Prime Meridian Special Opportunities Fund, LP (Prime), and Ceteris Portfolio Services, LLC (Ceteris) are the only remaining defendants.  (*See id.* [discontinuance against PRFG, PRFG SPV #1 LLC, Ali Mayar, Vincent Bardong, and Michael Peragine; NYSCEF 233, Decision and Order at 1 [mot. seq. no. 006] [dismissing CFG Merchant Solutions, LLC].)

[3] Radium's motion is limited to the 161 Funding Agreements between PRFG and nonparty merchants that are subject to the parties' Joint Statement of Undisputed Facts; Radium reserves its right to continue prosecuting this action as to the remaining 115 Funding Agreements in which it allegedly participated.  (NYSCEF 445, Joint Statement of Undisputed Facts [JSUF] at 5 n 5.)

<u>The Master Participation Agreement</u>

On January 5, 2016, Radium and PRFG entered into a Master Participation Agreement (MPA). (*Id.* ¶ 5; NYSCEF 325, MPA.) Pursuant to the MPA, PRFG agreed to present Radium with funding opportunities to co-invest; Radium could elect to participate in these funding opportunities by directly investing its funds with PRFG "under the same terms and conditions as detailed in the individual Funding Agreement(s)."[4] (NYSCEF 325, MPA at Recital B.) Upon an agreement to participate, Radium would purchase a certain share of the "Collections"[5] received by PRFG under the Funding Agreements in PRFG's name. (*See id.* at Recital B; *id.* § 1.11.) Pursuant to section 2.5 of the MPA, PRFG agreed to "collect payments from the Clients and provide to [Radium] on a weekly basis an amount equal to the pro-rata co-investment percentage minus deductions … ." (*Id.* § 2.5.)

Radium participated in 161 Funding Agreements in accordance with the MPA. (NYSCEF 445, JSUF ¶ 7; *id.* at 5 n 5; NYSCEF 317, Schedule II.)[6] With respect to

---

[4] Funding Agreement is defined as "[t]hat certain Funding Agreement described in the Recitals between [PRFG] and Client, including but not limited to a Merchant Cash Advance Agreement, a Revenue Based Financing Agreement and /or a Business Loan Agreement and all related documents." (NYSCEF 325, MPA § 1.14.) The Recitals state that PRFG "may choose to enter into Funding Agreements with Client(s) under the terms acceptable to each as detailed in the individual Funding Agreement(s)." (*Id.* at Recital A.) Client is defined as "[a] business which enters into a Funding Agreement with [PRFG] and Participants." (*Id.* § 1.8.) Radium is defined as a Participant. (*Id.* at 1.)

[5] Collections as denied as "[p]roceeds of Purchased Receivables received by the [PRFG], a portion of which may be passed on to [Radium] on a pro rata basis in accordance with [Radium]'s participation interest." (NYSCEF 325, MPA § 1.11.)

[6] Radium contends that it participated in 276 Funding Agreements. (NYSCEF 445, JSUF at 5 n 5; NYSCEF 318, Schedule III [remaining 115 Funding Agreements].) As stated *supra*, Radium's motion is limited to its participation in the 161 Funding Agreements that are subject to the JSUF.

652120/2020 RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No. 012 013

Page 3 of 23

each, PRFG would first email Radium, often with a subject heading referencing a "'Syndication Opportunity,'" with the name of the prospective merchant(s) in either the subject line or body of the e-mail, asking Radium to confirm via email by a specific date as to whether Radium "would commit within the maximum amount PRFG made available to Radium." (NYSCEF 445, JSUF ¶ 6[a]-[b].) After Radium's confirmation of acceptance and "how much it would fund within the maximum syndication dollar amount being offered to Radium," "there would be a submission with wire instructions to PRFG's specified bank account." (*Id.* ¶ 6[c].) Sometimes, however, a syndication opportunity would be offered and accepted orally and ultimately memorialized in a periodic syndication sheet. (*Id.* ¶ 6[d].) Pursuant to section 2.4 of the MPA, once Radium accepted the investment opportunity and delivered the funds, PRFG was then to simultaneously fund "the full contracted amount as specified on the Clients Funding Agreement with all co-investment monies." (NYSCEF 315, MPA § 2.4).

The Credit Agreements

In 2017, PRFG formed PRFG SPV #1 LLC (SPV), which was fully owned by PRFG. (NYSCEF 445, JSUF ¶ 8; NYSCEF 326, Certificate of Sole Manager ¶ 1.) In 2018 and 2019, SPV, as borrower, and PRFG, "'in its individual capacity'" and as servicer, entered into Credit Agreements with Arena PRFG, as lender, collateral agent, and administrative agent, for a $25 million secured loan. (NYSCEF 445, JSUF ¶¶ 9-10; NYSCEF 328, 2018 Credit Agreement; NYSCEF 329, 2019 Credit Agreement.) Prime was an additional lender under the 2019 Credit Agreement. (NYSCEF 445, JSUF ¶ 10; NYSCEF 329, 2019 Credit Agreement at 109/138.) Pursuant to two Receivables Purchase Agreements and several Assignments, PRFG transferred to SPV specific

merchant receivables that SPV pledged as collateral as defined in the Credit Agreements to Arena PRFG. (NYSCEF 445, JSUF ¶ 10[a]-[b]; NYSCEF 328, 2018 Credit Agreement § 5.1[a]; NYSCEF 329, 2019 Credit Agreement § 5.1[a]; NYSCEF 330, 2018 Receivables Purchase Agreement; NYSCEF 331, 2019 Receivables Purchase Agreement; NYSCEF 332-340, sample assignments.) SPV was to deposit the merchant collections in an account at Signature Bank (Collection Account) controlled by Arena PRFG. (*See* NYSCEF 445, JSUF ¶¶ 16, 23; NYSCEF 328, 2018 Credit Agreement § 5.2[a]; NYSCEF 329, 2019 Credit Agreement § 5.2[a].) Arena PRFG was issued a security interest in the funds in the Collection Account, Receivables, and proceeds, among other things. (NYSCEF 328, 2018 Credit Agreement §§ 5.1[a][i], [xv], [xviii], 5.2[b]; NYSCEF 329, 2019 Credit Agreement §§ 5.1[a][i], [xv], [xviii], 5.2[b]; NYSCEF 423, December 28, 2017 Control Account Agreement § 4; NYSCEF 350, February 28, 2020 Control Account Agreement § 3.) Arena PRFG was also issued a security interest in the equity interests in SPV. (NYSCEF 445, JSUF ¶ 14[a]; NYSCEF 343, Pledge Agreement.) Arena PRFG filed UCC-1 financing statements. (NYSCEF 445, JSUF ¶ 17; NYSCEF 351, New York UCC-1.)

The Promissory Notes

Radium loaned to PRGF $3 million through three promissory notes, each for the principal amount of $1 million:

(i) Note Serial #00137 "made the 29th day of November, 2019" and signed by PRFG on November 30, 2018 (NYSCEF 27) and Corrected Note and

**652120/2020 RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC**
**Motion No. 012 013**

**Page 5 of 23**

5 of 23

Acknowledgement of Subordination Serial #00137 signed by PRFG "March___, 2019" (NYSCEF 455),

(ii)     Note Serial #00139 "made the 25th day of March, 2019" and signed by PRFG on April 2, 2019 (NYSCEF 28), and Subordinate Note and Acknowledgement of Subordination Serial #00139 "made the 25th day of March, 2019" and signed by PRFG "April___, 2019" (NYSCEF 456 at 2-4), and

(iii)    Note serial #00140 "made the 29th day of March, 2019" signed by PRFG April 2, 2019 (NYSCEF 29) and Subordinate Note and Acknowledgement of Subordination Serial #00140 "made the 29th day of March, 2019" and signed by PRFG "April___, 2019" (NYSCEF 456 at 5-7).

The subordinated versions state that the notes are subordinate to 2018 Credit Agreement.  It is disputed which versions of the notes are operative.  Radium's representative testified that he never signed the versions containing the subordination language.  (NYSCEF 489, tr at 166:11-14, 169:10-14 [Caruso depo].)  One of PRGF's owners averred that Radium falsified the unsubordinated versions of the notes. (NYSCEF 97, Mayar aff ¶¶ 119-123.)

PRFG Defaults under the Credit Agreements

On February 29, 2020 and March 5, 2020, Arena PRFG notified PRFG that SPV was in default under the Credit Agreements.  (NYSCEF 445, JSUF ¶ 19; NYSCEF 353, Feb. 29, 2020 Notice; NYSCEF 354, Mar. 5, 2020 Notice.)  By March 31, 2020 Notice, Arena PRFG notified PRFG that it was exercising voting control over SPV.  (NYSCEF 445, JSUF ¶ 22; NYSCEF 360, Mar. 31, 2020 Notice.)  Ceteris began servicing the

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC          Page 6 of 23
  Motion No.  012 013

6 of 23

collections of the receivables pursuant to a April 8, 2020 Servicing Agreement. (NYSCEF 445, JSUF ¶¶ 24, 40; NYSCEF 361, Servicing Agreement.) On May 1, 2020, Arena PRFG issued notices stating that it intends to foreclose upon the Collateral as defined in the Credit Agreements and sell the same in accordance with UCC Article 9 on May 15, 2020. (NYSCEF 445, JSUF ¶ 26; NYSCEF 363, May 1, 2020 Notification at 2, 4.) Arena PRFG assigned its rights as the administrative agent and collateral agent under the Credit Agreements to PAF. (NYSCEF 445, JSUF ¶ 25; NYSCEF 362, Assignment of Agency § a.) The foreclosure sale was advertised in two newspapers. (NYSCEF 445, JSUF ¶ 28; NYSCEF 365, affs of publication) and took place on May 15, 2020. (NYSCEF 445, JSUF ¶ 34.) PAF was the only bidder that appeared and "credit bid" $1 million, and thus, PAF won the auction. (*Id.* ¶¶ 35-37.) PAF foreclosed on the collateral which included participant syndicate portions of the receivables, including Radium's. (*Id.* ¶ 38; NYSCEF 371, Memo of Sale; Notice of Public Foreclosure Sale.) Although Arena PRFG had previously delivered revenue from the syndicated portions of the Collection Account to syndicate participants including Radium, as provided in section 2.6 of the Credit Agreements, it ceased doing so on the date of the foreclosure sale. (NYSCEF 445, JSUF ¶ 23.) Radium has not received any remittances in connection with its share of Collections since May 2020. (*Id.* ¶ 39.) On May 29, 2020, Radium filed this action. (*See* NYSCEF 1, Summons with Notice.)

Claims

Radium's remaining claims in this action are for:

(i) declaratory judgment against all defendants stating that Radium "has absolute ownership and an unconditional right of possession to its participation interest in and its

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC          Page 7 of 23
    Motion No.  012 013

7 of 23

[* 7]

*pro rata* share of the participation payments from the collection of the Syndication Receivables" (NYSCEF 12, Complaint ¶ 200),

(ii) declaratory judgment against AILP, Arena PRFG, and PAF (collectively, Arena Defendants) stating that (1) the Arena Defendants "acted in a commercially unreasonable manner … and in violation of UCC §§ 9-610 and 9-615(f)" in conducting the UCC sale, (2) the UCC sale is null and void, and (3) Radium "has absolute ownership and an unconditional right of possession to its participation interest in and its pro *rata share* of the participation payments from the collection of the Syndication Receivables" (*id.* ¶ 217),

(iii) tortuous interference with the MPA against the Arena Defendants and Ceteris who allegedly "intentionally and tortiously interfered with and improperly caused and procured [PRFG]'s breach of the MPA by, *inter alia*, misappropriating Radium's participation interest and its rights to weekly participation payments from the collection of the Syndication Receivables" (*id.* ¶ 223),

(v) tortuous interference with PRFG's promissory notes against the Arena Defendants by "interfere[ing] with Radium's rights to repayment under the Notes" by "improperly taking possession and control of … the Note Receivables and the proceeds thereof" and by "direct[ing] [PRFG] … to divert the proceeds from the Note Receivables that should have gone back to pay the Notes, to [AILP] and Arena PRFG" (*id.* ¶¶ 248-249, 255), and

(vi) conversion against the Arena Defendants in that "Arena PRFG improperly exercised dominion and control of Radium's participation interest in the Syndication Receivables and interfered with Radium's absolute and superior right to such

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No.  012 013

Page 8 of 23

8 of 23

[* 8]

participation interest by improperly transferring same [sic] to" PAF in the UCC sale. (*Id.* ¶ 266; *see* NYSCEF 239, Decision and Order at 7 [dismissing claims (ix) and (x) and alter ago liability] [mot. seq. no. 003].)

**Legal Standard**

Under CPLR 3212, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [citations omitted].) Once the movant has made such a showing, the burden shifts to the opposing party to demonstrate, with admissible evidence, facts sufficient to require a trial, or summary judgment will be granted. (*See Winegrad v NY Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985].) "[S]ummary judgment may be granted as to one or more causes of action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms as may be just." (CPLR 3212 [e].) "New York courts routinely grant summary judgment where … summary resolution may be determined as a matter of law based on the plain language of the operative contracts." (*CNY Residential LLC v 68-70 Spring Partners, LLC*, 2024 NY Slip Op 30176[U], *8 [Sup Ct, NY County 2024] [citations omitted].)

**Discussion**

Radium's Rights Vis-à-Vis the Purchased Receivables

Radium contends that it has an undivided ownership interest in the Funding Agreements in which Radium participated pursuant to the MPA (Radium FAs), entitling Radium to commensurate collections on Radium FAs (Radium RTR), including any collections after the foreclosure sale; that Radium's ownership interest in Radium FAs

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No.  012 013

Page 9 of 23

9 of 23

[* 9]

could not have been transferred to SPV; that Arena PRFG's UCC-1 financing statements are immaterial because Radium's ownership interest in Radium FAs was never transferred to SPV; and that the Arena Defendants converted Radium's ownership interest in Radium MAs through the foreclosure sale. Conversely, the Arena Defendants, Prime, and Ceteris argue that Radium was an unperfected or unsecured creditor of PRFG and its ownership claim on the collateral was, at most, a subordinate security interest which was legally extinguished when Arena PRFG, as SPV's creditor, foreclosed on the collateral.

The contract at issue is the MPA. Although the parties also examine the Credit Agreements, Receivable Purchase Agreements, and Assignments in their motion papers, the court declines to do the same in determining Radium's rights under the MPA. Radium is not a signatory to these agreements, and thus, these agreements do not alter the Radium-PRFG relationship which is controlled by MPA. (*Highland Crusader Offshore Partners, L.P. v Targeted Delivery Tech. Holdings, Ltd.*, 184 AD3d 116, 121 [1st Dept 2020] [holding that "[i]t is a general principle that only the parties to a contract are bound by its terms" (citation omitted)].)[7]

Radium asserts that the MPA is a true participation agreement. The court agrees.

> "Courts have developed two tests to determine whether a transaction is a true participation or whether it is in fact a disguised loan. The following factors indicate that a transaction is a true participation: 1) money is advanced by participant to a lead lender; 2) a participant's right to repayment only arises when a lead lender is paid; 3) only the lead lender can seek legal recourse against the borrower; and 4) the document is evidence of the parties['] true intentions." (*Rothenberg v Oak Rock Fin., LLC*, 2015 US Dist LEXIS 44032, *26-27, 2015

---

[7] The court notes that the parties do not argue that Radium falls into any exception to this general principal.

652120/2020  RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC          Page 10 of 23
  Motion No.  012 013

[* 10]

WL 10663413, *7 [ED NY, Mar. 31, 2015, No. 14-cv-3700] [citation omitted].)

The MPA satisfies each of these factors.

Nevertheless, the court must examine the language of the MPA to determine what Radium bargained for. The MPA defines several terms, including but not limited to "'Collateral'" ("All collateral and guarantees received by or granted to [PRFG] pursuant to a [Funding] Agreement, or otherwise securing a Client's Obligations"), "'Collections'" ("Proceeds of Purchased Receivables received by [PRFG], a portion of which may be passed on to [Radium] on a pro rata basis in accordance with [Radium]'s participation interest"), "'Participant's Share of Collections'" ("[Radium]'s pro-rata share of the Collections based upon [Radium]'s percentage of participation"), "'Participant's RTR' or 'Participant's Right to Receive'" ("The total amount of credit card or bank deposit receivables which [Radium] has invested in and owns outright as a co-investor"), "'Purchased Receivables'" ("Credit card receivables or bank deposit receivables purchased by [PRFG] and [Radium] from a Client as described in a Funding Agreement"), and "'RTR'" ("[PRFG]'s and [Radium]'s 'Right to Receive,' which represents the full receivable due and payable under the [Funding] Agreement"). (NYSCEF 325, MPA §§ 1.10, 1.11, 1.20, 1.21, 1.26, 1.31.) With the exception of "Collections" none of these defined terms are used outside of Section 1 (Definitions) of the MPA.[8] Section 4.2 provides

> "[o]n a weekly basis [PRFG] shall pay to [Radium], its pro-rata share, less those amounts described in Section 2.4 above, of Collections via ACH transfer to a bank account designated by [Radium] to receive payments. If for any reason

---

[8] "Participant's Share of Collections" is used in section 2.7 of the MPA: "Participant acknowledges and accepts that Add-On Financings may result in a dilution of Participant's Share of Collections from a given Funding Agreement." (NYSCEF 325, MPA § 2.7.)

[PRFG] shall hold on to [Radium's] share of Collections, it is acknowledged by [PRFG] that such Collections are the property of [Radium] and shall be held for the benefit of [Radium] except in circumstances where this amount is used to offset any unpaid costs or extraordinary expenses associated with this Agreement. All payments due hereunder shall be made by ACH transfer." (*Id*. § 4.2.)

Radium argues that it owns the Purchased Receivables, or at least a portion thereof, but what Radium bargained for is the Collections, which are the proceeds of the Purchased Receivables and not the Purchased Receivables themselves. That the MPA defines "'Participant's RTR' or 'Participant's Right to Receive'" as "[t]he total amount of credit card or bank deposit receivables which [Radium] has invested in and owns outright as a co-investor" (*Id*. § 1.21) does not advance Radium's ownership argument.

"A fundamental tenet of contract law is that agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent is what they express in their written contract. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms, without reference to extrinsic materials outside the four corners of the document." (*Goldman v White Plains Ctr*., 11 NY3d 173, 176 [2008] [internal quotation marks and citations omitted].)

The MPA is unambiguous and neither party makes an argument to the contrary. Accordingly, the court declines to look outside the MPA's four corners in determining Radium's rights under the MPA. The fact that the defined term "'Participant's RTR' or 'Participant's Right to Receive'" is not used anywhere else in the MPA besides the Definitions section, whereas the defined term "'Collections'" is so used, evidences the parties' intent that Radium bargained for the right to receive proceeds from the Purchased Receivables but not the Purchased Receivables themselves. Thus, Radium's ownership argument fails. Radium's interest is in the Collections. PRFG only had a contractual obligation to pay Radium a portion of the proceeds of the Purchased Receivables once collected. (*See* NYSCEF 325, MPA § 4.2; *In re Yale Express Sys.,*

*Inc.*, 245 F Supp 790, 792 [SD NY 1965] [participant's "right to repayment would arise only upon the receipt by [lender] of payment from [borrower]"]; *see also In re Okura & Co.*, 249 BR 596, 610 [Bankr SD NY 2000] [same].) The Collections, however, were ultimately subsumed as collateral in connection with the Credit Agreements.

Arena PRFG's Security Interest

Article 9 of the UCC makes clear that there is no distinction between security interests and outright sales of receivables with respect to the priority, attachment, and perfection rules. (*See* UCC § 9-109, comment 5 [2001] ["This Article applies to both types of transactions. The principal effect of this coverage is to apply this Article's perfection and priority rules to these sales transactions"].) Comment 5 to UCC § 9-109 addresses this situation: PRFG's transfer of the Purchased Receivables to SPV as part of a secured transaction.

> "Following a debtor's outright sale and transfer of ownership of a receivable, the debtor-seller retains no legal or equitable rights in the receivable that has been sold. … This is so whether or not the buyer's security interest is perfected. … However, if the buyer's interest in accounts or chattel paper is unperfected, a subsequent lien creditor, perfected secured party, or qualified buyer can reach the sold receivable and achieve priority over (or take free of) the buyer's unperfected security interest under Section 9-317. … It is so for the simple reason that Sections 9-318 (b), 9-317, and 9-322 make it so. … Because the buyer's security interest is unperfected, for purposes of determining the rights of creditors of and purchasers for value from the debtor-seller, under Section 9-318(b) the debtor-seller is deemed to have the rights and title it sold. Section 9-317 subjects the buyer's unperfected interest in accounts and chattel paper to that of the debtor-seller's lien creditor and other persons who qualify under that section." (*Id.*)

"The creation of a valid and enforceable security interest requires (1) the secured debtor receive some value, (2) the debtor have rights in the collateral at issue, and (3) an agreement." (*U.S. Claims, Inc. v Flomenhaft & Cannata, LLC*, 519 F Supp 2d 515, 520 [ED Pa 2006]; *see* UCC § 9-203[b].)

"When all three requirements [of creating a valid and enforceable security interest] are met, a security interest 'attaches' to the collateral and is enforceable between the parties to the agreement. UCC § 9-203(a). The next step, 'perfection,' is necessary in order to maximize the secured creditor's rights (i.e. to establish priority) against third persons laying claim to the same collateral. 4 James J. White & Robert S. Summers, Uniform Commercial Code § 30-1(b) (5th ed. 2002). Where there are conflicting security interests in the same collateral, priority is determined by looking to the order of perfection. See UCC § 9-322(a). Perfected security interests take priority over conflicting unperfected interests. UCC § 9-322(a)(2). The subjective knowledge of a secured creditor with regard to another's conflicting security interest is irrelevant: the first to perfect prevails. UCC § 9-322, cmt. 4, ex. 2." (*U.S. Claims, Inc.*, 519 F Supp 2d at 520-21.)

First, SPV obtained rights in the Purchased Receivables. PRFG transferred the Purchased Receivables to SPV. (*See* NYSCEF 445, JSUF at 5 n 5 ["The parties … do not dispute that PRFG transferred PRFG's title and interest in the Radium [F]As … to SPV, pursuant to Assignments"][9]; NYSCEF 332, Assignment § 2[a], [d] ["[PRFG] does hereby sell, transfer, assign, set over and-otherwise convey to the Purchaser, without recourse … all right, title and interest of [PRFG] in and to the following: (a) the Related

---

[9] The parties concede that PRFG transferred to SPV Purchased Receivables pertaining to the 161 Funding Agreements in which Radium participated. (NYSCEF 445, JSUF at 5 n 5; NYSCEF 317, Schedule II.) Radium contends that it also participated in the 115 Funding Agreements listed on Schedule III to the JSUF that are not subject to the JSUF. (NYSCEF 445, JSUF at 5 n 5; NYSCEF 318, Schedule III.) Upon review of Schedule III and submitted sample Assignments, there are no issues of fact that Purchased Receivables pertaining to the following 27 Funding Agreements listed on Schedule III were also transferred to SPV (i) pursuant to Feb 1, 2018 Assignment: RPMT-0004198, RPMT-0004164, RPMT-0004067, RPMT-0003932, RPMT-0003873, RPMT- 0003863, RPMT- 0003652, RPMT-0003654, RPMT-0003548, RPMT-0003545, RPMT-0003498, RPMT-0003453, RPMT-0003454, RPMT-0003374, RPMT-0003347, RPMT-0003159, RPMT-0003295, RPMT-0003307, RPMT-0003272 (*see* NYSCEF 332, Feb 1, 2018 Assignment at 5-14/14), (ii) pursuant to July 19, 2018 Assignment: RPMT-0004642, RPMT-0004635, RPMT-0004614, RPMT-0004581, RPMT-0004567, RPMT-0004563, RPMT-0004553 (*see* NYSCEF 334, July 19, 2018 Assignment at 5-8/9), and (iii) pursuant to May 17, 2019 Assignment: RPMT-0005571. (*See* NYSCEF 336, May 17, 2019 Assignment at 7/8.) Although an issue of fact exists as to whether the Purchased Receivables pertaining to the remaining 88 Funding Agreements listed on Schedule III in which Radium allegedly participated were assigned to SPV, this issue does not prevent summary judgment in defendants' favor. Indeed, Radium proffered no evidence that it participated in the 88 Funding Agreements.

[* 14]

Receivables listed on Schedule A to this Assignment" and "(d) all payments on or under and all proceeds" (emphasis added)].[10]) Thus, SPV had rights in the Purchased Receivables that SPV pledged as collateral. (*See* UCC § 9-203[b][2].) That the Assignments' Schedule A specified as to each transferred receivable "PRFG % Ownership" or "Open Right-to-Receive Percentage" (NYSCEF 445, JSUF at 7 n 8) is of no consequence. As discussed *supra*, PRFG remained the owner of the Purchased Receivables, whereas Radium received a contractual right to receive a percentage of the proceeds of the Purchased Receivables.

Further, value has been given to SPV as borrower pursuant to the Credit Agreements. (*See* UCC § 9-203[b][1].) Finally, SPV pledged the Purchased Receivables and proceeds to Arena PRFG as collateral as defined in the Credit Agreements. (*See* UCC § 9-203[b][3][A]; NYSCEF 328, 2018 Credit Agreement §§ 1.1, 5.1[a][i],[xv],[xviii], 5.2[b]; NYSCEF 329, 2019 Credit Agreement §§ 1.1, 5.1[a][i],[xv],[xviii], 5.2[b].) Thus, there are no issues of fact that Arena PRFG held security interest in the Purchased Receivables and proceeds pertaining to the 161 Funding Agreements that are subject to the JSUF (NYSCEF 445, JSUF at 5 n 5; NYSCEF 317, Schedule II), as well as the Purchased Receivables and proceeds pertaining to the 27 Funding Agreements listed on Schedule III to the JSUF. (*See supra* at 14 n 9.)

Next, Arena PRFG properly filed a UCC-1 form listing as collateral "[a]ll of [PRFG]'s right, title and interest in and to, whether now existing or hereafter created, the

---

[10] The parties concede that "[t]he Assignments at issue are in all material respects substantively the same as relevant to this action." (NYSCEF 445, JSUF at 7 n 8; *see* NYSCEF 332-340, Assignments)

Receivables and Related Security … sold pursuant to that certain Receivables Purchase Agreement, dated as of February 1, 2018 … by and between [PRFG] and [SPV]" as well as "all Collections and other money received with respect to the Related Receivables." (NYSCEF 351, UCC-1 at 6, 8/44; *see id.* at 14, 16/44 [same as to assets transferred pursuant to August 28, 2019 Receivables Purchase Agreement between PRFG and SPV]; *see Lashua v La Duke*, 272 AD2d 750, 751 [3d Dept 2000] ["In order for a security interest to be valid and enforceable …, the debtor must sign a document describing the collateral, the security interest must attach, and [the interest] must be perfected" (citations omitted)].) Additionally, Arena PRFG perfected its security interest in the Collection Account by control. (*See* NYSCEF 445, JSUF ¶¶ 16, 23; NYSCEF 328, 2018 Credit Agreement §§ 5.2[a]; NYSCEF 329, 2019 Credit Agreement § 5.2[a]; NYSCEF 423, December 28, 2017 Control Account Agreement § 3; UCC § 9-312[b][1] [perfection by control].)[11] Radium admits that it did not file its own UCC financing statement. (*See* NYSCEF 446, Moving Brief at 32/34.) Simply put, Arena PRFG had a perfected security interest in the Purchased Receivables, and Radium did not.[12] Arena

---

[11] Radium takes issue with the fact that the Credit Agreements identify the account ending 3387 as the Collection Account, and the December 28, 2017 Control Account Agreement pertaining to the account ending 3387 is entered into by PRFG and not SPV. The December 28, 2017 Control Account Agreement, however, shows that the account ending 3387 was subject to Arena PRFG's control. To the extent another account was created to hold collections, the account ending 8588, the evidence demonstrates that that account was likewise controlled by Arena PRFG. (NYSCEF 350, Feb. 28, 2020 Control Account Agreement.) In any event, the fact that Arena PRFG had control over the Collection Account is conceded. (*See* NYSCEF 445, JSUF ¶ 23.)
[12] In the alternative, Radium argues that its interest in the Collections constitutes payment intangibles and is automatically perfected upon purchase of such payment intangibles. Assuming without deciding that Radium purchased payment intangibles, its interest did not attach because the MPA does not "provide[] a description of the collateral" (UCC § 9-203[b][3][A]), i.e. fails to identify the Purchased Receivables in whose Collections Radium allegedly acquired an interest. (*See* UCC § 9-108[a] ["a

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No. 012 013

Page 16 of 23

16 of 23

[* 16]

PRFG, in its secured position, has no obligation to Radium. (*See Spielman v Acme Natl. Sales Co.*, 169 AD2d 218, 223 [3d Dept 1991] ["secured creditor" "not … bound to contracts entered into between the debtor and third parties, notwithstanding the secured creditor's possession of the debtor's assets as collateral after default" (citations omitted)].)

Contrary to Radium's argument, the Credit Agreements' section 2.6 (b), which excludes "any amounts required to be paid as Receivables Participation Payments to a Receivables Participant" from weekly distribution to the Credit Agreements' parties, does not evidence Arena PRFG's intent to take on PRFG's obligations to Radium under the MPA. (NYSCEF 328, 2018 Credit Agreement § 2.6[b]; NYSCEF 329, 2019 Credit Agreement § 2.6[b].) Indeed, Arena PRFG specifically disclaimed assumption of any such obligations. (NYSCEF 328, 2018 Credit Agreement § 12.27 ["None of the Agents or the Lenders have assumed or will assume any obligations with respect to any Contract or any Receivables Participation Agreements"]; NYSCEF 329, 2019 Credit Agreement § 12.27 [same].)

---

description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described"].) Radium fails to proffer any other documents providing a description of the relevant Purchased Receivables. (*See Ultimore, Inc. v Bucala (In re Bucala)*, 464 BR 626, 630 [Bankr SD NY 2012] ["A court may look to multiple documents to determine whether a valid and enforceable security agreement exists" (citation omitted)].) Thus, Radium cannot benefit from the automatic perfection rule. (*See* UCC § 9-309[3] ["The following security interests are perfected when they attach: … a sale of a payment intangible"]; *Pascack Community Bank v Universal Funding, LLP*, 419 NJ Super 279, 290 [Super Ct of NJ, App Div 2011] [The sale of a payment intangible is granted automatic perfection upon 'attachment,' i.e., when the security interest becomes enforceable against the debtor" (citations omitted)].)

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC          Page 17 of 23
   Motion No.  012 013

17 of 23

Causes of Action

*(i) and (ii) Declaratory Judgment*

For the reasons discussed *supra*, Radium's claims for (i) and (ii) declaratory judgment seeking declaration that Radium "has absolute ownership and an unconditional right of possession to its participation interest in and its *pro rata* share of the participation payments from the collection of the Syndication Receivables" (NYSCEF 12, Complaint ¶¶ 200, 217) fail.

Radium also seeks a declaratory judgment stating that (1) the Arena Defendants "acted in a commercially unreasonable manner … and in violation of UCC §§ 9-610 and 9-615(f)" in conducting the UCC-9 sale, and (2) the UCC-9 sale is null and void. (*Id.* ¶ 217.) Radium seeks damages in excess of $8,484,517. (*Id.*)

"[A] person is liable for damages in the amount of any loss caused by a failure to comply with this article" 9 of UCC. (UCC § 9-625[b].) Radium, however, is "neither a debtor, obligor nor one holding a security interest" in the foreclosed collateral and thus is not entitled to damages under the UCC. (*Airball Capital LLC v Rosenthal & Rosenthal Inc.*, 73 Misc 3d 1218[A], 2021 NY Slip Op 51082[U], *7 [Sup Ct, NY County 2021]; *see* UCC § 9-625 ["(c) [Persons entitled to recover damages; statutory damages if collateral is consumer goods.] Except as otherwise provided in Section 9-628: (1) a person that, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages under subsection (b) for its loss"].) Accordingly, Radium lacks standing to seek declaration that the sale was commercially unreasonable. (*Phelan v Buffalo*, 54 AD2d 262, 264 [4th Dept 1976] ["Whether an individual has standing to seek [declaratory] relief is largely determined by

652120/2020  RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No. 012 013

Page 18 of 23

whether he has a matured legally protectible interest in the outcome of the case such as to assure concrete adverseness in the presentation of issues" (citation omitted)].)

Next, the declaratory judgment claim fails to the extent Radium seeks the declaration that the sale is null and void. The court has no "authority to unwind a concluded UCC sale" as a matter of law. (*Atlas MF Mezzanine Borrower, LLC v Macquarie Texas Loan Holder LLC*, 174 AD3d 150, 161 [1st Dept 2019] [dismissing "cause of action seeking a declaration invalidating and setting aside the sale … because this remedy is not provided for in the UCC"].)

*(iii) Tortious Interference with the MPA*

Radium alleges that the Arena Defendants and Ceteris "intentionally and tortiously interfered with and improperly caused and procured [PRFG]'s breach of the MPA by, *inter alia*, misappropriating Radium's participation interest and its rights to weekly participation payments from the collection of the Syndication Receivables." (NYSCEF 12, Complaint ¶ 223.)

"To state a claim for tortious interference with contract, a plaintiff must allege (1) the existence of a valid contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procuring of the breach of that contract, and (4) damages." (*111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC*, 220 AD3d 435, 436 [1st Dept 2023] [citation omitted].)

Arena PRFG's withholding of merchant collection, including proceeds of the Purchased Receivables subject to the MPA, with the assistance of Ceteris, the servicer, following the foreclosure sale does not evidence intentional procurement of a breach of the MPA. Where, as here, "creditors … have a right to protect [their] own legal or

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No.  012 013

Page 19 of 23

[* 19]

19 of 23

financial stake in the breaching party's business" and act to protect that right, the tortious interference claim cannot stand absent a showing of malice or fraudulent or illegal means. (*111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC*, 2022 NY Slip Op 34258[U], *11 [Sup Ct, NY County 2022] [internal quotation marks and citation omitted], *affd as mod* 220 AD3d 435 [1st Dept 2023]; *see also White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422, 426 [2007] [economic interest defense applied where "defendant was the breaching party's creditor"]; *Collins v E-Magine, LLC*, 291 AD2d 350, 351 [1st Dept 2002] ["[a]s a general matter, economic interest precludes a claim for tortious interference with a contract unless there is a showing of malice or illegality"], *lv denied* 98 NY2d 605 [2002].) There is no evidence of malice or illegality on Arena PRFG or Ceteris' part. Thus, the tortious interference with the MPA claim fails.

*(v) Tortious Interference with the Notes*

Radium alleges that the Arena Defendants tortiously interfered with Radium's promissory notes by "interfere[ing] with Radium's rights to repayment under the Notes" by "improperly taking possession and control of … the Note Receivables and the proceeds thereof" and by "direct[ing] Platinum … to divert the proceeds from the Note Receivables that should have gone back to pay the Notes, to [AILP] and Arena PRFG." (NYSCEF 12, Complaint ¶¶ 248-249, 255.)

The Arena Defendants' alleged diversion of the note receivables to satisfy PRFG's obligations under the Credit Agreements likewise cannot constitute tortious interference. (*See supra* at 19-20.) Indeed, "[p]rocuring the breach of a contract in the exercise of equal or superior right is acting with just cause or excuse and is justification for what would otherwise be an actionable wrong." (*Felsen v Sol Cafe Mfg. Corp.*, 24

NY2d 682, 687 [1969] [internal quotation marks and citation omitted].) Additionally, there is no evidence of malice or illegality on the Arena Defendants' part.

*Swift Funding, LLC v Isacc*, 144 AD3d 471, 472 (1st Dept 2016) is distinguishable as there is no indication that defendant in that case acted to protect their economic interest. *Bernberg v Health Mgt. Sys.*, 303 AD2d 348, 349 (2d Dept 2003), where plaintiff defeated dismissal on CPLR 3211(a)(7) motion by pleading that "defendants destroyed the financial well-being of [breaching party] with the intention of procuring [breaching party]'s default on the notes" is likewise distinguishable; there is no evidence that the Arena Defendants intentionally procured PRFG' default of the notes. The allegations that the Arena Defendants commandeered PRFG to obtain funds from Radium under false pretenses (NYSCEF 12, Complaint ¶¶ 244-246) is not supported by evidence. Thus, the claim for tortious interference with the notes fails.

*(vi) Conversion*

The claim for (vi) conversion of Radium's participation interest in the Purchased Receivables (*id.* ¶ 266) fails. (*See Spielman*, 169 AD2d at 223 [secured creditor's disposal of collateral does not support conversion claim].) Additionally, Radium lacks "legal ownership or an immediate right of possession to specifically identifiable funds" at issue. (*Whitman Realty Group, Inc. v Galano*, 41 AD3d 590, 592 [2d Dept 2007] [conversion requires showing that plaintiff "had legal ownership or an immediate right of possession to specifically identifiable funds and that the defendant exercised an unauthorized dominion over such funds to the exclusion of the plaintiff's rights" (citation omitted)].) Radium's "mere right to payment cannot be the basis for a cause of action alleging conversion." (*Selinger Enters., Inc. v Cassuto*, 50 AD3d 766, 768 [2d Dept

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC
Motion No. 012 013

Page 21 of 23

2008]; *see also Stack Elec., Inc. v DiNardi Constr. Corp.*, 161 AD2d 416, 417 [1st Dept 1990] ["by failing to allege that the defendants had 'ownership, possession or control' of the specific funds in question, but, rather, that the defendants had an obligation to pay the plaintiff what it was owed after receiving payment from the State University Construction Fund, plaintiff failed to allege the necessary elements for a cause of action for conversion" (citations omitted)]; *Independence Discount Corp. v Bressner*, 47 AD2d 756, 757 [2d Dept 1975] [conversion claim failed where "[t]he security agreement did not impose a duty upon [defendant] to pay over to plaintiff the specific proceeds of the sale of each appliance covered by the agreement" and "there was no specific fund from which payment had to be made"].)

The court has considered the balance of the parties' arguments and finds them either without merit or otherwise not warranting an alternate result.

Accordingly, it is

ORDERED that Radium2 Capital, LLC (f/k/a Radium2 Capital Inc.)'s motion sequence 012 is denied; and it is further

ORDERED that defendant Platinum Asset Funding, LLC, Arena PRFG, LLC, Arena Investors, LP, Prime Meridian Special Opportunities Fund, LP, and Ceteris Portfolio Services, LLC's motion sequence 013 is granted and the complaint is dismissed with costs and disbursements to said defendants as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC    Page 22 of 23
    Motion No.  012 013

22 of 23

[* 22]

ORDERED that the Clerk is directed to enter judgment accordingly.

2025A06152162559AMASLEYE736AF468327A216BBAF6834FD845A9C

**6/15/2025**
**DATE**

_____
**ANDREA MASLEY, J.S.C.**

**CHECK ONE:** [X] CASE DISPOSED   [ ] NON-FINAL DISPOSITION

[ ] GRANTED   [ ] DENIED   [X] GRANTED IN PART   [ ] OTHER

**APPLICATION:** [ ] SETTLE ORDER   [ ] SUBMIT ORDER

**CHECK IF APPROPRIATE:** [ ] INCLUDES TRANSFER/REASSIGN   [ ] FIDUCIARY APPOINTMENT   [ ] REFERENCE

.

**652120/2020   RADIUM2 CAPITAL, LLC (F/K/A vs. PLATINUM ASSET FUNDING, LLC**
**Motion No.  012 013**

**Page 23 of 23**

[* 23]